**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0952n.06

**No. 12-2505**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MATTHEW T. SZURA & CO., INC., | ) | **FILED**<br>Nov 05, 2013<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| GENERAL INSURANCE CO. OF | ) | STATES DISTRICT COURT FOR THE |
| AMERICA, | ) | EASTERN DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |

Before:  KEITH, GUY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  This insurance dispute arises from General Insurance Co. of America's refusal to defend Matthew T. Szura & Co. (which operates under the name Szura Insurance Services) against claims brought by Mayfair Insurance Agency Inc., a third party, in a separate state-court suit.  Szura initiated this action against General Insurance to obtain a declaration that General Insurance was obligated to defend Szura in the Mayfair litigation.  Szura also asserted claims for breach of contract and bad faith.  After Szura and General Insurance filed cross-motions for summary judgment, the district court concluded that General Insurance had no duty to defend Szura against Mayfair's allegations, and the court awarded summary judgment to General Insurance.  For the reasons that follow, we affirm on grounds other than those on which the district court relied when it reached its decision.

**I.**

Matthew T. Szura & Co. and Mayfair Insurance Agency are competing providers of insurance products and services. Mayfair filed a separate action in Michigan state court in February 2009 against Szura and Doug Charon, an insurance agent who previously had been affiliated with Mayfair. The complaint in that case included eight counts, only three of which named Szura as a defendant: count six (Tortious Interference with Contract), count seven (Tortious Interference with Business Relationship/Expectancy), and count eight (Civil Conspiracy). The gravamen of the complaint was that Charon breached his confidentiality agreement and fiduciary duties when he parted company with Mayfair, joined Szura, and sold Szura's insurance products to Mayfair's customers. Mayfair alleged that Szura tortiously interfered with the confidentiality agreement in the Charon–Mayfair employment contract, as well as with Mayfair's business relationships and expectancies, when Szura engaged Charon to sell its insurance products to certain Mayfair customers with whom Charon had developed a relationship while working at Mayfair.

Szura asked General Insurance Co. of America to defend Szura in the suit pursuant to an Insurance Professionals Errors and Omissions Liability Insurance Policy that General Insurance had issued to Szura. When General Insurance refused to defend Szura, Szura brought this action against General Insurance in the Oakland County Circuit Court to obtain a declaration that the Errors and Omissions Policy compelled General Insurance to defend Szura in that suit. Szura also asserted claims for breach of the insurance contract and bad faith. General Insurance removed the case to the United States District Court for the Eastern District of Michigan on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332(a). Both Szura and General Insurance subsequently moved for summary judgment.

The district court heard argument on the motions, and two days later the court issued an opinion and order denying Szura's motion for partial summary judgment, granting General Insurance's motion for summary judgment, and entering judgment in favor of General Insurance. The district court concluded that the Errors and Omissions Policy covered only "errors and omissions in connection with providing insurance services to Szura's customers, if one of those customers brought suit against Szura based on the insurance services it received." Because "Mayfair did not sue in relation to any insurance services it received from Szura," the district court held that the events and conduct that gave rise to the Mayfair litigation were "outside the scope of professional services as defined by the Policy." The court further noted that "[c]ourts have uniformly held that claims of tortious interference with prospective business or business relations are not covered by an errors and omissions policy." The district court therefore appeared to base its decision on two independent conclusions: (1) the policy covered only claims brought by a customer, and not claims asserted by a competitor; and (2) the term "professional services," as used in the policy, did not include the type of activities that would give rise to a claim for tortious interference. Szura timely appealed.

## II.

Several provisions of the Errors and Omissions Policy issued by General Insurance to Szura are relevant to this appeal. Section one, captioned "Insuring Agreements," includes two pertinent provisions delineating the scope of the coverage:

A. COVERAGE PROVISION:
We will pay on behalf of the insured **damages** that the insured becomes legally obligated to pay because of **claims** made against the insured for **wrongful acts** arising out of the performance of **professional services** for others.

C. DEFENSE PROVISION

-3-

We have the right and the duty to defend the insured against any covered **claim**, even if such **claim** is groundless, false or fraudulent. . . .  We have no duty to defend any **claim** not covered by this policy.

Certain of those terms are defined in section four:

"**Claim**" means a demand for money or **professional services** received by the insured for **damages**, including but not limited to the service of a lawsuit or the institution of arbitration proceedings or other alternative dispute resolution proceedings, alleging a **wrongful act** arising out of the performance of **professional services**.

"**Professional Services**" means services performed for others in the Insured's capacity as an insurance agent, insurance broker, insurance general agent, insurance managing general agent, surplus lines insurance broker, insurance consultant, insurance based risk management consultant or advisor, employee insurance benefits counselor, estate insurance planner, insurance claims administrator, insurance appraiser, insurance expert witness, insurance premium financier, notary public, instructor of insurance subjects, or board member of a nonprofit insurance professional association.

"**Wrongful Act**" means any actual or alleged negligent act, error or omission, **Personal Injury**, or **Advertising Injury**.

Section two, titled "Exclusions," restricts the scope of coverage and provides one caveat with potential implications for the insurer's duty to defend:

This policy does not apply to any claim . . . arising out of any dishonest, fraudulent, criminal, or malicious act, error, or omission or acts of a knowingly wrongful nature committed by or at the direction of any insured.  We will defend the insured against such claim unless or until the dishonest, fraudulent, criminal, malicious or knowingly wrongful act has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not.  We do not have the duty to defend the insured in a criminal proceeding.  This exclusion does not apply to any insured who did not commit, participate in, acquiesce to or remain passive after having learned of the dishonest, fraudulent, criminal, malicious act, error, or omission or knowingly wrongful conduct.

**III.**

-4-

We review *de novo* the district court's decision to grant General Insurance's motion for summary judgment. *See Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As a general matter, questions of contract interpretation are questions of law that this court reviews *de novo*. *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008). If the contract is clear and unambiguous, the court need not determine issues of fact and instead should interpret the contract based on the intent of the parties as expressed in the plain language of the contract. *Id.* To determine whether the contract is unambiguous, the court should read the contract as a whole and give the contract language its ordinary and natural meaning. *Id.*

An insurer's duty to defend the insured in certain types of litigation derives from contract rather than statute, and the scope of the duty therefore turns on the specific terms to which the parties agreed. *See Frankenmuth Mut. Ins. Co. v. Cont'l Ins. Co.*, 537 N.W.2d 879, 880 (Mich. 1995); *see also Twichel v. MIC Gen. Ins. Corp.*, 676 N.W.2d 616, 622 (Mich. 2004) ("An insurance policy is enforced in accordance with its terms."). The clear and unambiguous language of the contract, rather than the parties' reasonable expectations, must determine the scope of coverage under an insurance contract. *See Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 786 (Mich. 2003).

"The duty to defend is essentially tied to the availability of coverage," moreover, and analysis of the insurer's duty to defend "must begin with an examination of whether coverage is possible." *Marlo Beauty Supply, Inc. v. Farmers Ins. Grp. of Cos.*, 575 N.W.2d 324, 327 (Mich. Ct. App. 1998). "If the policy does not apply, there is no duty to defend." *Am. Bumper & Mfg. Co. v.*

*Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996). But "the scope of the two duties is not identical; the duty to defend is broader than the duty to indemnify. If the allegations of a third party against the policyholder even arguably come within the policy coverage, the insurer must provide a defense." *Id.* (internal citations omitted). In determining the scope of a contractual duty to defend, all doubts concerning the applicability of the duty to defend must be resolved in favor of the insured. *Polkow v. Citizens Ins. Co. of Am.*, 476 N.W.2d 382, 384 (Mich. 1991).

**IV.**

This case turns on the interplay of two provisions of the Errors and Omissions Policy. The Defense Provision provides that General Insurance "ha[s] the right and the duty to defend the insured against any covered claim, even if such claim is groundless, false or fraudulent." Whether General Insurance was obligated to defend Szura in the Mayfair litigation thus depends on whether one or more of Mayfair's claims against Szura was a "covered claim." To answer that inquiry the court must look to the Coverage Provision, which stipulates that General Insurance "will pay on behalf of the insured damages that the insured becomes legally obligated to pay because of claims made against the insured for wrongful acts arising out of the performance of professional services for others." A wrongful act is "any actual or alleged negligent act, error or omission." General Insurance thus had a duty to defend Szura against any lawsuit that alleged negligent acts, errors, or omissions arising out of Szura's performance of professional services, including services performed in its capacity as an insurance agent, if those services were provided for others.

The district court focused its analysis on the portion of the Coverage Provision that limits coverage to claims "arising out of the performance of professional services for others." In its view, General Insurance was not required to defend Szura against the claims asserted by Mayfair for two

-6-

distinct reasons: (1) the Errors and Omissions Policy "limits General Insurance's duty to defend to only those claims brought by the object of the services provided by Szura," and (2) the policy covers claims resulting from "wrongful acts arising out of the performance of professional services," and the term "professional services" "do[es] not include intentional and tortious interference with contracts and business relationships."

General Insurance reiterates these arguments on appeal. But General Insurance also advances a different, more compelling basis on which to affirm the district court: The Errors and Omissions Policy committed General Insurance to defend Szura against certain negligence claims; Mayfair's suit against Szura alleged intentional torts rather than negligence; and General Insurance therefore had no duty to defend Szura in the Mayfair litigation. We find this latter argument to be meritorious. Because we interpret the contract *de novo* and Szura had an opportunity to respond to this argument in its reply brief, we need not address the grounds on which the district court relied when it awarded summary judgment to General Insurance. *See Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 494 (6th Cir. 2006) (stating that the court of appeals may affirm district court's judgment on other grounds "as long as the opposing party is not denied the opportunity to respond to the new theory").

General Insurance was required to defend Szura against all arguably covered claims, *see Am. Bumper & Mfg. Co.*, 550 N.W.2d at 481, and only claims "made against the insured for wrongful acts arising out of the performance of professional services for others" were covered under the Errors and Omissions Policy. The term "wrongful acts" therefore controls the types of legal claims that are covered under the policy. Because the policy defines wrongful act as "any actual or alleged negligent act, error or omission, Personal Injury, or Advertising Injury," the policy "covers only

liability for negligent conduct." *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 457 (6th Cir. 2003) (applying Michigan law and discussing a policy that covered "damages because of a negligent act, error or omission in the rendering of or failure to render professional services"). It does not require General Insurance to provide Szura with a defense to allegations of intentional misconduct.

Although the Michigan Supreme Court has never opined on whether the term "negligent acts, errors or omissions" might include intentional misconduct, courts around the nation are in general agreement that a policy covering "negligent acts, errors or omissions" does not cover intentionally wrongful conduct. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 539 F.3d 809, 815 (8th Cir. 2008); *Pac. Ins. Co. v. Burnet Title, Inc.*, 380 F.3d 1061, 1065 (8th Cir. 2004); *Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 349 (7th Cir. 2003); *Town of Cumberland v. R.I. Interlocal Risk Mgmt. Trust, Inc.*, 860 A.2d 1210, 1220 (R.I. 2004); *Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256, 1261–62 (Idaho 2002). We therefore conclude that General Insurance was not required to defend Szura in the Mayfair litigation unless Mayfair alleged negligent conduct.

Of course, General Insurance might have been obligated to provide a defense even though the complaint asserted causes of action other than negligence. The insurer's duty to defend depends upon the allegations in the third party's complaint against the insured. *Protective Nat'l Ins. Co. of Omaha v. City of Woodhaven*, 476 N.W.2d 374, 375 (Mich. 1991) (citing *Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1980)). But "[t]he duty to defend is not limited by the precise language in the underlying complaint. The insurer has the duty to look beyond the allegations in the complaint to determine whether coverage is possible." *Pattison v. Emp'rs Reins. Corp.*, 900 F.2d 986, 988 (6th Cir. 1990). Accordingly, to determine whether the act,

error, or omission that gave rise to the underlying lawsuit is one that implicates the duty to defend, courts should look not to the theory of liability alleged in the complaint, but instead to whether the underlying allegations "sound[] in negligence." *See 1325 N. Van Buren, LLC v. T-3 Grp., Ltd.*, 716 N.W.2d 822, 838–39 (Wis. 2006) (interpreting identical contract language).

To ascertain whether General Insurance was bound to defend Szura against Mayfair's suit, we therefore must look to Mayfair's complaint to determine whether Mayfair's allegations sounded in negligence. One final rule bears on this inquiry: "[I]nsurers owe a duty to defend until the claims against the policyholder are confined to those theories outside the scope of coverage under the policy." *Am. Bumper & Mfg. Co.*, 550 N.W.2d at 483. General Insurance thus was obliged to defend Szura against all three of Mayfair's claims if just one of those claims implicated the duty to defend.

Mayfair asserted three separate causes of action against Szura in its complaint, and each of those claims alleged intentional misconduct rather than negligence. Looking first at the claims for tortious interference, count six alleged tortious interference with a contract, and count seven alleged tortious interference with business relationships. To succeed on either cause of action, Mayfair had to prove that Szura intentionally committed a *per se* wrongful act or maliciously committed a lawful act for the purpose of invading Mayfair's contractual rights or business relationships. *See CMI Int'l, Inc. v. Intermet Int'l Corp.*, 649 N.W.2d 808, 812 (Mich. Ct. App. 2002).

With that in mind, we turn to the actual allegations in the complaint. Mayfair alleged that Szura "intentionally interfered" with the contract between Charon and Mayfair, "improperly interfered" with that contract, "intentionally interfered" with Mayfair's business relationships and expectancies, and "improperly interfered" with those business relationships and expectancies.

Counts six and seven of the complaint thus alleged intentional misconduct that falls outside the scope of "wrongful act," as that term is defined in the Errors and Omissions Policy. Neither intentional interference nor improper interference with contract rights and business relationships "sounds in negligence." *See 1325 N. Van Buren, LLC*, 716 N.W.2d at 838–39; *see also Hoyle*, 48 P.3d at 1262 ("[T]he term 'improper' is in no way synonymous with the word 'negligent.'").

Count eight, which alleged a civil conspiracy to tortiously interfere with Mayfair's contract rights and business relationships, likewise alleged intentional misconduct. To prove the conspiracy, General Insurance had to allege and establish that Szura and Charon acted in concert to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *See Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992). Tortious intent was a *sine qua non* to Szura's liability for civil conspiracy. *See Rosenberg v. Rosenberg Bros. Special Account*, 351 N.W.2d 563, 569 (Mich. Ct. App. 1984). It is therefore unsurprising that the complaint alleged that Charon and Szura reached an agreement, the object of which was to interfere with Mayfair's contract rights and business relationships. Because such an agreement sounds in intentional misconduct rather than negligence, the alleged conspiracy was not a "wrongful act" for which General Insurance had a duty to defend Szura.

Accordingly, the district court properly awarded summary judgment to General Insurance. General Insurance had no obligation to defend Szura in the Mayfair litigation unless Mayfair's claims were arguably covered under the Coverage Provision. *See Am. Bumper & Mfg. Co.*, 550 N.W.2d at 481; *Marlo Beauty Supply, Inc.*, 575 N.W.2d at 327. The Coverage Provision extended only to claims that arose out of "wrongful acts," and only conduct that sounds in negligence is deemed a wrongful act as that term is used and defined in the Errors and Omissions Policy. *See*

*Northland Ins. Co.*, 327 F.3d at 457; *1325 N. Van Buren, LLC*, 716 N.W.2d at 838–39. None of the factual allegations in Mayfair's complaint against Szura sounded in negligence, and it therefore follows that General Insurance had no duty to defend Szura against Mayfair's claims.

## V.

Szura argues that General Insurance had a duty to defend Szura against intentional misconduct as well as negligent acts, errors, and omissions because the "Exclusions" section of the Errors and Omissions Policy states: "We will defend the insured against such claim unless or until the dishonest, fraudulent, criminal, malicious or knowingly wrongful act has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not." Szura misunderstands the effect of this exclusion. Exclusions limit the scope of coverage; an exclusion cannot expand the scope of coverage beyond that provided in the insuring agreement. *See Fragner v. Am. Cmty. Mut. Ins. Co.*, 502 N.W.2d 350, 352 (Mich. Ct. App. 1993). Had Mayfair alleged negligent conduct, General Insurance would have been required to defend Szura in that suit and, ultimately, to indemnify Szura for any damages, unless the Szura employee was ultimately determined to have acted fraudulently or maliciously rather than negligently. In that event, General Insurance would be relieved of its duty to defend Szura as soon as a trial verdict, court ruling, regulatory ruling, or legal admission established that the employee had acted fraudulently or maliciously. Because Mayfair sued Szura for intentional misconduct rather than a negligent act, error, or omission, however, the initial claims were not covered and the exclusions do not apply.

## VI.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.