2023 IL App (1st) 221625

First District
Third Division
August 30, 2023

No. 1-22-1625

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>401 NORTH WABASH VENTURE, LLC, d/b/a Trump International Hotel & Tower; ACE AMERICAN INSURANCE COMPANY; ILLINOIS UNION INSURANCE COMPANY; and QBE INSURANCE CORPORATION,<br><br>    Defendants<br><br>(401 North Wabash Venture, LLC,<br>    Defendant-Appellant;<br><br>ACE American Insurance Company, Illinois Union Insurance Company, and QBE Insurance Corporation,<br>    Defendants-Appellees). | Appeal from the Circuit Court of Cook County.<br><br>No. 2021 CH 03148<br><br>The Honorable<br>Michael T. Mullen,<br>Judge Presiding. |

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice D.B. Walker concurred in the judgment and opinion.

## OPINION

¶ 1     In 2018, the State of Illinois filed a lawsuit against defendant, 401 North Wabash Venture, LLC d/b/a Trump International Hotel & Tower (401 North Wabash), in connection with the allegedly improper operation of a cooling water intake structure at its property located at 401 North Wabash Avenue in Chicago; several environmental groups also intervened in the action. Plaintiff Continental Casualty Company (Continental), one of 401 North Wabash's insurers, filed a declaratory judgment action seeking a declaration that it owed no duty to defend 401

North Wabash in connection with the litigation, ultimately filing a motion for judgment on the pleadings on the matter. 401 North Wabash's other insurers—defendants ACE American Insurance Company (ACE), Illinois Union Insurance Company (Illinois Union), and QBE Insurance Corporation (QBE)—filed similar motions for judgment on the pleadings, also contending that they owed 401 North Wabash no duty to defend. The circuit court granted the motions, finding that the conduct alleged by the underlying complaints did not constitute an "occurrence" under any of the insurance policies and, in any event, coverage was barred by the policies' pollution exclusion. 401 North Wabash now appeals and, for the reasons set forth below, we affirm.

¶ 2                                BACKGROUND

¶ 3                            *Insurance Policies*

¶ 4        Between 2008 and 2020, 401 North Wabash was a named insured on commercial general liability insurance policies issued by the four insurers involved in the instant litigation (collectively, the insurance policies). The ACE and Illinois Union (collectively, Chubb) insurance policies insured 401 North Wabash for three annual periods from May 16, 2008, through May 16, 2009 (ACE), and May 16, 2009, through May 16, 2011 (Illinois Union).[1] The QBE insurance policy insured 401 North Wabash for four annual periods from May 16, 2011, through May 16, 2015. The Continental insurance policy insured 401 North Wabash for five annual periods from May 30, 2015, through May 30, 2020.

¶ 5        All of the insurance policies provided coverage for "property damage" which was caused by an "occurrence" during the policy period. An "occurrence" was defined under each policy

_____

[1]The Chubb policies differ slightly from the other policies, in that Chubb's obligation does not include a duty to defend but is limited to payment of damages in excess of 401 North Wabash's "Self Insured Retention."

as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" was defined as (1) "[p]hysical injury to tangible property, including all resulting loss of use of that property" or (2) "[l]oss of use of tangible property that is not physically injured."

¶ 6       All of the insurance policies also included pollution exclusions. The Chubb policies covering the 2008-09 and 2009-10 policy periods included an "Absolute Pollution Exclusion," which provided that the policy did not apply to "any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused." The exclusion further provided that "[p]ollution includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water."

¶ 7       The 2010-11 Chubb policy, as well as the Continental and QBE policies, included a "Total Pollution Exclusion," which provided that the policy did not apply to " '[b]odily injury' or 'property damage' which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." "Pollutants" was defined under the Continental and Chubb polices as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." The QBE policy contained a slightly broader definition, defining "pollutants" as "any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids,

alkalis, radiation or radioactive contamination, pathogenic or poisonous biological or chemical materials and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

¶ 8                                        *Underlying Litigation*

¶ 9          In 2018, the State, on its own motion and at the request of the Illinois Environmental Protection Agency (Illinois EPA), filed a three-count complaint in the circuit court of Cook County against 401 North Wabash, alleging violations of Illinois' Environmental Protection Act (Act) (415 ILCS 5/42 (West 2016)). The complaint alleged that 401 North Wabash owned a property located at 401 North Wabash (property), alongside the Chicago River. The property's heating, ventilation, and air conditioning (HVAC) system contained a "cooling water intake/discharge system," which withdrew approximately 19.7 million gallons of water per day from the Chicago River to use for cooling purposes, then returned the same volume of water back into the river in the form of heated effluent.[2] The complaint alleged that the heated effluent constituted a contaminant under the Act, such that 401 North Wabash was required to obtain a permit[3] prior to discharging it into the river.

¶ 10         According to the complaint, in January 2012, 401 North Wabash submitted a NPDES permit application to the Illinois EPA, and the permit was issued in September 2012. In October 2012, 401 North Wabash submitted an application to modify the terms of its permit based on an error in its initial permit application, and its most recent permit was issued in March 2013. The permit expired on August 31, 2017; 401 North Wabash submitted an

---

[2]The regulations promulgated pursuant to the Act define "effluent," in relevant part, as "any wastewater discharged, directly or indirectly, to the waters of the State or to any storm sewer." 35 Ill. Adm. Code 301.275 (2023).

[3]The federal Clean Water Act of 1977 (Clean Water Act) established a national pollution discharge elimination system (NPDES) to regulate point sources which discharge pollutants into waters, including the issuance of permits for discharge of pollutants. See 33 U.S.C. § 1342 (2018). Section 12(f) of the Act prohibits discharge of contaminants into Illinois waters without an NPDES permit. 415 ILCS 5/12(f) (West 2016).

application to renew its permit in May 2017, but no such permit had been issued as of the date the complaint was filed.

¶ 11    The complaint alleged that, despite the expiration of its NPDES permit, 401 North Wabash had continued operating its water intake structures at the property and had continued discharging heated effluent into the Chicago River. Accordingly, count I of the complaint alleged that 401 North Wabash had violated the Act and its applicable regulations and sought an injunction ordering 401 North Wabash to cease and desist from any further violations, along with the imposition of civil penalties.

¶ 12    Count II of the complaint alleged that, in seeking NPDES permits, 401 North Wabash had failed to comply with application requirements for "new sources," such as the property. Finally, count III of the complaint alleged that 401 North Wabash had failed to comply with the regulations promulgated pursuant to the Act. As with count I, counts II and III requested an injunction ordering 401 North Wabash to cease and desist from further violations, along with civil penalties.

¶ 13    In addition to the State's complaint, two environmental organizations—the Sierra Club and Friends of the Chicago River—filed an intervenor complaint, in which they alleged violations of the federal Clean Water Act and common-law public nuisance. The intervenors alleged that, when the property was constructed in 2005, it retained the water intake structure which had been used by the site's previous owner but also constructed a new water intake structure. As a new structure, it required a NPDES permit, which 401 North Wabash did not obtain until 2012. Additionally, pursuant to the terms of the permit, 401 North Wabash was required to submit certain information to the Illinois EPA, which it did not do. The intervenors further alleged that the property was considered a "new facility" under the Clean Water Act, which required

401 North Wabash to submit certain information and studies prior to the commencement of water withdrawals. While some of this information was eventually submitted, the intervenors alleged that it was incomplete and did not contain certain required information, such as data on the property's impact on fish and other wildlife. The intervenors also alleged that the property had not taken proper steps to minimize the impact of its intake on fish and other wildlife, as required.

¶ 14    The intervenors alleged that 401 North Wabash had violated the Clean Water Act by failing to comply with the requirements of its NPDES permit and federal regulations concerning cooling water intakes at new facilities.[4] The intervenors further alleged that 401 North Wabash was liable for causing a public nuisance, as its operation of its water intake structures in violation of its permit and federal regulations substantially and unreasonably interfered in the intervenors' right to fish and otherwise recreate in the Chicago River. The intervenors alleged that this conduct had injured the intervenors "to a currently unknown degree and in an amount to be determined through discovery and at trial and reflective of the extent of harms to aquatic life, ecosystems, and economic and other interests in the Chicago River" caused by the conduct. The intervenors requested (1) an injunction preventing 401 North Wabash from further violating the Clean Water Act and its permit, (2) an order requiring 401 North Wabash to complete all actions necessary to ensure compliance with the Clean Water Act, (3) payment of a civil penalty to the United States for each violation, (4) payment of the intervenors' costs and attorney fees, (5) an injunction preventing 401 North Wabash "from operating its facility

---

[4]According to Continental's motion for judgment on the pleadings in the instant case, the intervenors' Clean Water Act claim was ultimately dismissed.

so as to create a public nuisance," and (6) "such other relief as the Court may deem appropriate."

¶ 15    In January 2021, the circuit court granted the State's motion for judgment on the pleadings as to counts I and III of its complaint, finding that 401 North Wabash was liable for violating environmental laws and regulations due to its unpermitted discharge into the Chicago River. The court further found that the "appropriate civil penalty for the above enumerated violations" remained at issue and would be addressed at subsequent hearings.

¶ 16                                          *Current Litigation*

¶ 17    In June 2021, Continental filed a complaint for declaratory judgment against 401 North Wabash and its other insurers, seeking a declaration that it owed no duty to defend or indemnify 401 North Wabash with respect to the claims alleged in the underlying litigation. Continental alleged that there was no coverage under its policies as (1) the underlying complaints did not seek "damages" as required by the policies, (2) the underlying complaints did not allege "bodily injury" or "property damage" as required by the policies, (3) the underlying complaints did not allege an "occurrence" under the policies, (4) 401 North Wabash first became aware of any alleged property damage prior to the inception of the policies, (5) 401 North Wabash failed to timely notify Continental of any occurrence, claim, or suit as required by the policies, (6) the policies' pollution exclusion precluded any potential coverage, and (7) the policies' "Expected or Intended Injury" exclusion precluded any potential coverage.

¶ 18    In November 2021, QBE filed an answer and counterclaim, in which it alleged that it had agreed to defend 401 North Wabash in the underlying litigation, subject to a full reservation of rights. In its counterclaim, however, QBE sought a declaration that it owed no duty to defend or indemnify 401 North Wabash under its policies as (1) the underlying complaints did not

allege "bodily injury" or "property damage" as required by the policies, (2) the underlying complaints did not allege an "occurrence" under the policies, (3) 401 North Wabash had knowledge of the alleged conduct prior to the inception of the polices, (4) 401 North Wabash did not timely inform QBE of the underlying litigation, (5) the policies' "Expected or Intended Injury" exclusion precluded any potential coverage, (6) the policies' "Damage to Impaired Property or Property not Physically Injured" exclusion precluded any potential coverage, and (7) the policies' pollution exclusion precluded any potential coverage.

¶ 19    In January 2022, Chubb also filed an answer and counterclaim, alleging that it owed no coverage under its policies for similar reasons as the other insurers. Specifically, Chubb alleged that no coverage was available as (1) the underlying complaints did not seek to recover damages for bodily injury or property damage, (2) the underlying complaints did not allege an occurrence under the policies, (3) the underlying complaints did not allege bodily injury or property damage occurring during the policy periods, (4) the underlying complaints did not allege any personal or advertising injuries, (5) the actions alleged in the underlying complaints were barred by the policies' pollution exclusions, (6) to the extent that the underlying complaints alleged property damage, coverage was precluded by the policies' "expected-or-intended injury" exclusion, and (7) the policies did not provide coverage for claims seeking equitable, declaratory, or injunctive relief. Chubb also alleged that, to the extent that coverage might otherwise exist, it had no obligation to pay any expenses until the policies' self-insured retentions were satisfied and further alleged that 401 North Wabash had forfeited any coverage by failing to timely notify Chubb and by voluntarily making payments without Chubb's written consent.

¶ 20    In May 2022, all of the insurers separately filed motions for judgment on the pleadings, pursuant to section 2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2020)). The insurers limited their motions to three claims: (1) there was no alleged "occurrence" under the policies, (2) the underlying complaints did not seek to recover damages for "property damage," and (3) even if coverage requirements were otherwise satisfied, the pollution exclusions precluded coverage.

¶ 21    First, the insurers claimed that there was no alleged "occurrence" under the policy, as "occurrence" was defined as an "accident," and the intentional discharge of thermal process wastewater without a necessary permit could not be considered to be an accident. Next, the insurers claimed that the underlying complaints did not seek recovery of damages due to "property damage" but instead sought only declaratory and injunctive relief, as well as civil penalties. Finally, the insurers contended that coverage was barred by the pollution exclusions in the policies, as the discharge of heated effluent was a pollutant under the policies.

¶ 22    In response, 401 North Wabash filed a cross-motion for judgment on the pleadings, contending that the allegations of the underlying complaints fell within the policies' coverage. 401 North Wabash claimed that the insurers focused solely on the allegations concerning the discharge of heated effluent and ignored the other parts of the underlying complaint, which focused on the damage to fish and other wildlife during the water intake process.[5] 401 North Wabash maintained that there was no indication that injury to such wildlife was intentional, that such injury was considered "property damage" under the policies, and that the intake of

---

[5]According to 401 North Wabash's motion, there are two types of potential damage to aquatic life at issue: entrainment and impingement. Entrainment involves river life being damaged in the process of being drawn into the water intake system, while impingement occurs when organisms too large to pass through the screens of the water intake system are trapped against the screens by the force of the flowing river water being drawn into the system. See also 40 C.F.R. § 125.83 (2022) (defining entrainment and impingement under the federal Clean Water Act).

water was not considered a "pollutant" under the policies. 401 North Wabash further noted that the underlying complaints also requested "other relief," which it claimed could constitute monetary damages.

¶ 23     On September 30, 2022, the circuit court granted the insurers' motions for judgment on the pleadings, finding that there was no "occurrence" under the policies. The court further found that, even if 401 North Wabash had prevailed on the other two issues, the pollution exclusion would bar coverage. 401 North Wabash timely filed a notice of appeal, and this appeal follows.

¶ 24                                ANALYSIS

¶ 25     On appeal, 401 North Wabash contends that the circuit court erred in granting the insurers' motions for judgment on the pleadings. Like a motion for summary judgment, a motion for judgment on the pleadings is limited to the pleadings. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). Judgment on the pleadings is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hooker v. Illinois State Board of Elections*, 2016 IL 121077, ¶ 21. When ruling on such a motion, "a court may consider only those facts appearing on the face of the pleadings, matters subject to judicial notice, and any judicial admissions in the record," and all well-pleaded facts and reasonable inferences based on those facts are taken as true. *Id.* The grant of a motion for judgment on the pleadings is reviewed *de novo*. *Id.*; *Wilson*, 237 Ill. 2d at 455. *De novo* review is also appropriate here, as the construction of the provisions of an insurance policy is a question of law, which is reviewed *de novo*. *Wilson*, 237 Ill. 2d at 455.

¶ 26     In a declaratory judgment such as the one at issue here, where the question is whether the insurer has a duty to defend, a court ordinarily looks to the allegations of the underlying complaint and compares them to the relevant provisions of the insurance policy. *Id.*; *Outboard*

*Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). This principle has been referred to as the "eight corners rule." *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 37; see also *Farmers Automobile Insurance Ass'n v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 694, 698 (2000). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Outboard Marine Corp.*, 154 Ill. 2d at 108. If it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage, however, an insurer may properly refuse to defend.[6] *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993) (citing *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991)).

¶ 27    The basis for the circuit court's decision in the instant case was its finding that the underlying complaints had not alleged an "occurrence" under the policies. As noted, all of the insurance policies provided coverage for property damage which was caused by an "occurrence" during the policy period. An "occurrence" was defined under each policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." While the policies do not define "accident," our courts have generally interpreted the term as meaning "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." (Internal quotation marks omitted.) *Korte & Luitjohan Contractors, Inc. v. Erie Insurance Exchange*, 2022 IL App (5th) 210254, ¶ 21; see also *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 749 (2008) (collecting cases). Moreover, " '[t]he natural

---

[6]We note that the Chubb policies include only a duty to indemnify, not a duty to defend. In Illinois, the duties to defend and to indemnify are not coextensive, with the obligation to defend being broader than the obligation to pay. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 366 (1988).

and ordinary consequences of an act do not constitute an accident.' " *State Farm Fire & Casualty Co. v. Watters*, 268 Ill. App. 3d 501, 506 (1994) (quoting *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 619 (1980)); see also *Stoneridge Development Co.*, 382 Ill. App. 3d at 749-50 (collecting cases).

¶ 28    Here, the parties have a fundamental disagreement as to the actions which constitute the purported "occurrence." 401 North Wabash contends that the relevant inquiry is whether it expected or intended for its withdrawal of river water to cause harm to fish and other aquatic life. The insurers, by contrast, maintain that the proper focus is on the property's intentional operation of its water intake structure in the absence of a valid NPDES permit. We agree with the insurers that the conduct at issue is the property's operation of its system generally, not the ultimate results of that operation.

¶ 29    The underlying complaints both exclusively state causes of action arising from the operation of the system in violation of the applicable statutory and regulatory requirements. In the State's complaint, count I alleged that 401 North Wabash had violated the Act and its applicable regulations by continuing to operate its water intake structures at the property and discharging heated effluent into the Chicago River, despite its lack of a valid NPDES permit. Count II alleged that, in seeking NPDES permits, 401 North Wabash had failed to comply with application requirements for "new sources" such as the property. Finally, count III alleged that 401 North Wabash had failed to comply with the regulations promulgated by the Pollution Control Board pursuant to the Act.

¶ 30    In the intervenors' complaint, count I alleged that 401 North Wabash had violated the Clean Water Act by failing to comply with the requirements of its NPDES permit and federal regulations concerning cooling water intakes at new facilities. Count II alleged that 401 North

Wabash was liable for causing a public nuisance, as its operation of its water intake structures in violation of its permit and federal regulations substantially and unreasonably interfered in the intervenors' right to fish and otherwise recreate in the Chicago River. The intervenors alleged that this conduct had injured the intervenors "to a currently unknown degree and in an amount to be determined through discovery and at trial and reflective of the extent of harms to aquatic life, ecosystems, and economic and other interests in the Chicago River" caused by the conduct.

¶ 31    Both complaints make clear that the challenged conduct is the failure to comply with the Act and its regulations. While the impact of the water intake structures on fish and other aquatic wildlife is certainly an issue, especially in the intervenors' complaint, it is only relevant in the larger context of statutory and regulatory compliance. In other words, 401 North Wabash is not being sued for endangering the local fish population—it is being sued for failing to comply with regulations which, in part, require it to study and minimize the impacts of its cooling operations on fish. To be sure, 401 North Wabash challenges the merits of these claims in the underlying litigation, and we do not express any opinion as to the outcome of that litigation.[7] The fact remains, however, that the issues revolve around 401 North Wabash's compliance with statutory and regulatory requirements. We cannot find that this alleged conduct constitutes an "occurrence" under the terms of the insurance policies.

¶ 32    Moreover, even if the property's impact on fish and wildlife was the relevant focus, it still would not be considered an "occurrence" under the policies. " 'The natural and ordinary

---

[7]We note that, in its answer to the State's complaint in the underlying litigation, 401 North Wabash admitted to operating without a valid permit but raised a number of affirmative defenses to the State's claims. As noted, the circuit court ultimately entered judgment on the pleadings in favor of the State as to count I and part of count III, finding that 401 North Wabash is liable for violations of the Act and its regulations.

consequences of an act do not constitute an accident.' " *Watters*, 268 Ill. App. 3d at 506 (quoting *Freyer*, 89 Ill. App. 3d at 619). 401 North Wabash makes much of the fact that the consideration of whether an injury was expected or intended is viewed from the standpoint of the insured. See *id.* It is clear, however, that 401 North Wabash was aware that impingement and entrainment were "natural and ordinary consequences" (internal quotation marks omitted) (*id.*) of operating its cooling water intake structure. Its 2013 permit required 401 North Wabash to submit "a summary of historical 316(b)[8] related intake impingement and/or entrainment studies, if any, as well as current impingement mortality and/or entrainment characterization data" within six months of the permit's effective date, and a 2017 letter from its environmental consultant to the Illinois EPA specifically referenced these requirements in seeking an extension of time "to determine the best options for complying with impingement and entrainment requirements." The fact that 401 North Wabash may not have known the extent of any such impingement or entrainment, due to its lack of study on the issue, does not mean that 401 North Wabash was unaware that operation of its cooling water intake structure would have *some* impact on the fish and other wildlife in the river. Again, 401 North Wabash disputes whether it was complying with the applicable requirements in the underlying litigation, and we do not express any opinion on the issue here. There can be no dispute, however, that impingement and entrainment are concerns for any cooling water intake structure, whether operating according to the law or not. We therefore cannot find that such impingement and entrainment constitutes an "occurrence" under the insurance policies.

---

[8]Section 316(b) of the Clean Water Act, now codified in section 1326(b), requires that cooling water intake structures "reflect the best technology available for minimizing adverse environmental impact." 33 U.S.C. § 1326(b).

¶ 33   We find unpersuasive 401 North Wabash's reliance on *Erie Insurance Exchange v. Imperial Marble Corp.*, 2011 IL App (3d) 100380. In that case, the Third District found that the underlying complaint alleged an "occurrence" where it alleged that the emissions from a manufacturing plant harmed nearby neighbors through an " 'ongoing, continuous, repeated, regular and uninterrupted' invasion of the complainants' persons and property by 'odors and air contaminants.' " *Id.* ¶ 17. The appellate court rejected the insurer's argument that, since the emissions were intentionally discharged, they did not constitute an accident and therefore were not an "occurrence." *Id.* ¶ 18. Instead, the court found that "[b]ecause the alleged bodily injury and property damage were unexpected results of [the manufacturing plant's] intended emissions, they constitute an accident under the policy." *Id.* In the case at bar, however, to the extent that damage to fish and wildlife is considered property damage (an issue we need not reach), it cannot be said that such damage was unexpected, as explained above. Accordingly, we affirm the circuit court's grant of the insurers' motions for judgment on the pleadings, as the underlying complaints did not allege an "occurrence" under the insurance policies.

¶ 34   As we agree with the circuit court's conclusion that the allegations of the underlying complaint do not allege an "occurrence" under the insurance policies, we need not consider the insurers' alternate arguments as to whether they allege "property damage" or the applicability of the pollution exclusion.

¶ 35                                  CONCLUSION

¶ 36   For the reasons set forth above, the circuit court's grant of the insurers' motions for judgment on the pleadings is affirmed, as the conduct alleged in the underlying complaints did not constitute an "occurrence" under the insurance policies.

¶ 37   Affirmed.

15

---

*Continental Casualty Co. v. 401 North Wabash Venture, LLC*, **2023 IL App (1st) 221625**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-CH-03148; the Hon. Michael T. Mullen, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | John F. Shonkwiler, of Leland Grove Law LLC, of Chicago, and Evan S. Schwartz, of Schwartz Conroy & Hack PC, of New York, New York, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael P. Baniak and Dora Lee, of Litchfield Cavo LLP, Scott E. Turner, of CAN, and Christoper A. Wadley and Eric D. Blanchard, of Walker Wilcox Matousek LLP, all of Chicago, and Edward J. Tafe, of CNA, of San Francisco, California, for appellees. |

---