CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Plaintiff-Appellant, v. ALLIANZ UNDERWRITERS INSURANCE COMPANY *et al.*, Defendants (Harbor Insurance Company *et al.*, Defendants-Appellees).

First District (6th Division)   No. 1—91—3431

Opinion filed December 11, 1992.

Sorling, Northrup, Hanna, Cullen & Cochran, of Springfield, Kevin M. Forde, Ltd., of Chicago, and Anderson, Kill, Olick & Oshinsky, of New York, New York (Lester O. Brown, Stephen R. Kaufmann, and Kevin M. Forde, of counsel), for appellant.

Querrey & Harrow, Ltd. (Ellyn B. Dorf, Victor Piekarski, Michael Resis, and Timothy J. Fagan, of counsel), and Haskell & Perrin (Stephen Sonderby, Mary Beth Denefe, and Eileen N. Miller, of counsel), both of Chicago, for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

This appeal arises from a declaratory judgment action brought by Central Illinois Public Service Company (CIPS) regarding liability coverage under two excess liability policies issued by Harbor Insurance Company (Harbor) and one policy issued by Columbia Casualty Company (Columbia). Harbor and Columbia filed motions for partial summary judgment which the trial court granted, finding that policies Nos. 126716, 127532, and RDX 1864547 did not provide liability coverage for the investigation, remediation, and prophylactic costs incurred and to be incurred by CIPS as a result of the environmental damage arising from its former gas manufacturing plant in Taylorville, Illinois, based upon the pollution exclusion found in these policies. The trial court also ruled that the partial summary judgment order was final and appealable pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). CIPS has appealed, raising the issue of whether the pollution exclusion provision in Harbor's and Columbia's excess liability policies bars coverage to CIPS for damages at the Taylorville site.

The Taylorville facility was purchased by CIPS in 1912. The plant ceased operations in 1930 and was sold in 1961. In October of 1985 the release of water gas tar was discovered at and around the Taylorville site. CIPS acknowledged that it was the responsible party pursuant to section 22.2(f)(1) of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1022.2(f)(1)). Under this provision, a former owner or operator is held strictly liable for the release or threat of release of a hazardous substance such as water gas tar. As a result of this occurrence CIPS was exposed to substantial liability. However, Harbor and Columbia denied coverage. In August 1987 CIPS filed a complaint seeking a judgment declaring, *inter alia*, the respective rights and obligations of CIPS, Harbor and Columbia regarding the alleged environmental damage at and around the Taylorville site. Harbor moved for partial summary judgment, asserting that the policies contained "an absolute pollution exclusion" which barred coverage for any damages arising from pollution. Because Columbia's policy No. RDX 1864547 provides coverage excess to Harbor's policy No. 126716 and incorporated its provisions, Columbia joined in Har-

bor's motion. In response to the motion, CIPS contended that endorsement 2, which contained the relevant exclusion, was ambiguous and was not intended to exclude coverage for "sudden and accidental" pollution damage like that which occurred at the Taylorville site.

The trial court recognized that the language in endorsement 2 was "clumsy and unnecessarily muddled" but found that it barred coverage for damages due to pollution.

CIPS contends that endorsement 2 is ambiguous and was not intended to preclude coverage for sudden and accidental pollution damage like the damage which occurred at the Taylorville site. The language of endorsement 2, which is identical in both policies at issue, provides:

> "It is understood and agreed that except insofar as coverage is available to the assured in the underlying insurances as set out in the schedule of underlying policies, this insurance shall not apply to any loss arising out of the contamination or pollution.
>
> Notwithstanding the foregoing, it is understood and agreed that this insurance does not apply to bodily injury, personal injury, or property damage arising out of the discharge, dispersal, release or escape of:
>
> (1) smoke, vapors, soots, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.
>
> (2) Oil or other petroleum substance or derivative (including any oil refuse or oil mixed with wastes) into or upon any watercourse or body of water, whether or not such discharge, dispersal, release or escape is sudden and accidental, but the exclusion (2) shall apply with respect to operations described as follows: ***."

CIPS first argues that the phrase "notwithstanding the foregoing" makes endorsement 2 ambiguous. "Notwithstanding" is defined in the dictionary as "without prevention or obstruction from or by," "in spite of," or "nevertheless." (Webster's Third New International Dictionary 1545 (1986).) CIPS claims that the first paragraph bars coverage for contamination or pollution unless coverage is available through an underlying insurance policy, but the second paragraph excludes coverage if the discharge of pollutants is not sudden and accidental, or for oil discharges into water arising from one of the opera-

tions listed even if the discharge is sudden and accidental. Thus, according to CIPS, the effect of the second paragraph of the endorsement beginning with the language "Notwithstanding the foregoing," which refers to the exclusion in the first paragraph, is to eliminate the "underlying insurance" requirement and replace it with an exclusion where the occurrence is not sudden and accidental. Harbor's interpretation of the endorsement is that the "sudden and accidental" requirement is *in addition to* the "underlying insurance" requirement.

■ CIPS argues that because the endorsement is subject to two interpretations, the language is, at best, ambiguous. Where an exclusionary clause is ambiguous any reasonable interpretation by the policyholder must be adopted. (*J G Industries, Inc. v. National Union Fire Insurance Co.* (1991), 218 Ill. App. 3d 1061, 1065, 578 N.E.2d 1259; *Simioni v. Continental Insurance Cos.* (1985), 135 Ill. App. 3d 916, 918, 482 N.E.2d 434.) However, this principle does not require an unreasonable interpretation which would have the effect of invalidating the contract between the parties. *J G Industries, Inc.*, 218 Ill. App. 3d at 1066.

■ The question of whether a policy is ambiguous is a matter of law, in which the court makes the determination by examining the language at issue in light of the policy as a whole. Thus, the court must construe the policy in its entirety, giving effect to all parts of the policy as is possible, including endorsements. (*Management Support Associates v. Union Indemnity Insurance Co.* (1984), 129 Ill. App. 3d 1089, 1092-93, 473 N.E.2d 405.) Where the language of the policy is unambiguous, the policy must be understood according to its plain, ordinary and popular meaning. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 495, 475 N.E.2d 872; *Marsh v. Metropolitan Life Insurance Co.* (1979), 70 Ill. App. 3d 790, 796, 388 N.E.2d 1121.

■ The language of paragraph one of the endorsement at issue states that coverage for pollution or contamination is excluded unless there is coverage provided by an underlying insurance policy listed in the schedule of underlying policies. Construing the language of paragraph two in light of paragraph one, the exception to the pollution exclusion for the discharge, dispersal, release or escape of the substances in subparagraph (1) which is sudden and accidental is only applicable where there is underlying insurance coverage. Harbor's interpretation of the endorsement which includes the requirements in both paragraphs is a reasonable one.

Although CIPS' interpretation is different than that of Harbor, the endorsement is not rendered ambiguous simply because there is disagreement as to its meaning. (*Katz v. American Family Insurance Co.* (1987), 163 Ill. App. 3d 549, 552, 516 N.E.2d 795.) The alternate interpretation must also be reasonable. Because CIPS' interpretation of the endorsement is that the exclusion in paragraph two eliminates the exclusion in paragraph one, it is not a reasonable one. Only one which preserves the "underlying insurance" requirement of paragraph one would be in accord with the principle that "meaning and effect, if possible, be given to every part of a contract so that one provision is not construed to annul another." (*St. Paul Fire & Marine Insurance Co. v. Frankart* (1977), 69 Ill. 2d 209, 216, 370 N.E.2d 1058.) Additionally, "an exception to an exclusion should not be interpreted as providing coverage or providing an additional basis for coverage." (*J G Industries*, 218 Ill. App. 3d at 1066. See also *Qualls v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 831, 834, 462 N.E.2d 1288.) We thus conclude that the language of endorsement 2 was not ambiguous.

■ CIPS also argues that the term "underlying insurance" in the endorsement is ambiguous and that its self-insured retention (SIR), which provides pollution coverage, operates as underlying insurance. CIPS supports this argument with reference to the "Advice of Insurance" document and a memorandum by Harbor's underwriter, Hall Wilson. However, because we conclude that there is no ambiguity in the policy at issue, any evidence beyond the four corners of the policy should not be considered. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4, 429 N.E.2d 1203; *Price v. State Farm Mutual Automobile Insurance Co.* (1983), 116 Ill. App. 3d 463, 470, 452 N.E.2d 49.) What is controlling is the insurance listed in the "Schedule of Underlying Policies" as stated in the first paragraph of the endorsement. CIPS' self-insurance is not among the policies listed in this document.

■ CIPS next contends that Harbor never interpreted endorsement 2 as an absolute pollution exclusion and failed to alert CIPS to the fact that the scope of coverage for pollution was reduced. CIPS relies on such evidence as a memo from Mr. Wilson and Ms. Cromer as well as the deposition testimony of Mr. Wilson as evidence that the reduction in coverage was never communicated. However, its argument fails for two reasons. First, CIPS has provided no authority to support its position that Harbor had any duty to alert CIPS to the change other than the language of the endorsement. (See *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 308, 393

N.E.2d 1223.) The second flaw in CIPS' argument is that it is supported with extrinsic evidence which is not applicable where the language of the policy is not ambiguous. See *Cincinnati Insurance Co. v. Miller* (1989), 190 Ill. App. 3d 240, 244, 546 N.E.2d 700; *Price*, 116 Ill. App. 3d at 470.

■■ CIPS further contends that under "industry-drafted" absolute pollution exclusions, it would not be excluded from coverage at the Taylorville site. CIPS argues that because other decisions have considered the contemporaneous statements of the insurance industry in determining that the exclusion for "sudden and accidental" pollution should be construed to provide coverage for long-term unintentional pollution, this court should also do so. According to CIPS' argument, if we were to consider this evidence, CIPS would not be barred from coverage by endorsement 2. However, CIPS' argument and its citation of authority are misplaced. CIPS is not precluded from coverage because the pollution at the Taylorville site was not sudden or accidental but because CIPS did not meet the underlying insurance requirement of the endorsement.

■■ CIPS' final contention is that, even if endorsement 2 is construed as not providing coverage, CIPS has coverage under exclusion (h) of policy No. 127532. Although CIPS argues that exclusion (h) overrides endorsement 2, Illinois law holds to the contrary that where the provisions of a policy and an attached endorsement conflict, the terms and conditions of the endorsement control and supersede the policy provisions. *G.E. Mathis Co. v. Centennial Insurance Co.* (1980), 80 Ill. App. 3d 610, 615, 400 N.E.2d 621; *Metro Inter-Insurance Exchange v. Anthony* (1971), 1 Ill. App. 3d 612, 616, 275 N.E.2d 296.

Accordingly, for the foregoing reasons, the order of the circuit court is affirmed.

Affirmed.

EGAN, P.J., and McNAMARA, J., concur.