2023 IL App (1st) 221529-U

SECOND DIVISION
DECEMBER 26, 2023

No. 1-22-1529

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| LM INSURANCE CORP. and LIBERTY INSURANCE CORP., | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 21 CH 538 |
| VILLAGE OF LYONS, | ) ) | Honorable Michael T. Mullen, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: The judgment of the circuit court of Cook County is reversed; the insurance policy contains reasonable, irreconcilably inconsistent provisions and is ambiguous, the policy must be construed in favor of the insured, and the insurer's duty to defend the insured arises as to the entire underlying complaint.

¶ 2    Plaintiffs, LM Insurance Corporation and Liberty Insurance Corporation (hereinafter, collectively "Liberty") filed a complaint for declaratory judgment against defendant, the Village of Lyons, Illinois (Lyons) and Willow Way, LLC (Willow). (Willow is not a party to this appeal.) Liberty insures Lyons under three relevant insurance policies. Willow sued Lyons

alleging the village wrongfully demolished a residential building it owned in Lyons. Lyons

tendered defense of Willow's lawsuit to Liberty. Liberty filed a complaint for a declaration that

"under insurance policies issued by it to [Lyons,] it has no duty to defend or to indemnify

[Lyons] in an underlying lawsuit" filed by Willow. Lyons filed an answer and affirmative

defenses to the complaint for declaratory judgment. The parties filed cross-motions for judgment

on the pleadings. Following a hearing, the circuit court of Cook County granted judgment on the

pleadings in part in favor of Liberty and in part in favor of Lyons. Upon a motion to reconsider,

the trial court reversed its judgment in favor of Lyons and entered judgment in favor of Liberty

on all counts. This appeal followed.

¶ 3                                      BACKGROUND

¶ 4      In May 2020, Willow filed a complaint against Lyons in the United States District Court

for the Northern District of Illinois for claims related to the demolition of a residential building

Willow owned in Lyons (hereinafter, "the underlying complaint"). The underlying complaint

alleges that in July 2016 Willow purchased real property improved with a residence in Lyons.

Willow placed funds in escrow with Lyons based on Lyons' claim the residence required repairs.

Willow immediately began to seek contractors to perform the work. Willow obtained building

permits to perform the work. By July 2017, the underlying complaint alleges, the contractor had

completed "a substantial amount" of the work at "substantial expense" to Willow.

¶ 5      In August 2017, Lyons informed Willow certain permits were set to expire and new

permits would have to be obtained. That same month, Lyons allegedly informed Willow's

contractor that certain work had to be performed on the residence but, on information and belief,

"no such work was legitimately required." In September 2017, Lyons allegedly informed Willow

the renovation project was on hold and Lyons was going to fine Willow's contractor for

improper work on the premises; but, on "information and belief, no such infraction occurred." Willow and its contractor attempted to obtain permission from Lyons to continue work on the project through October 2017, when Lyons orally informed Willow of certain requirements for the project that Willow alleges, on information and belief, were not "legitimately required." Willow received a bid from its contractor for this additional work.

¶ 6     In January 2018, Lyons allegedly informed Willow that Lyons wanted to tear the house down, but Lyons gave no reason why. Willow attempted to resolve the issues with the residence with Lyons and received additional requirements for the renovation. In April 2018, Willow's contractor informed Willow that the project was "in a state of substantial completion." In July 2018, Lyons allegedly informed Willow that it would have to engage in extensive additional renovations or demolish the entire property; but, on "information and belief, no such work was legitimately required." That same month Lyons allegedly informed Willow that additional repairs were needed immediately or the house would be torn down. Over the next several months Willow sought a full list of the additional repair requirements but Lyons failed to provide one.

¶ 7     In October 2019, Lyons allegedly informed Willow that the residence was beyond repair and was scheduled for demolition. In December 2019, Lyons gave notice of intent to demolish the residence. In February 2020, Willow observed notices of demolition posted at the residence. Later in February 2020, Willow, after repeated attempts, met with two building inspectors for Lyons. That same day, Willow had observed the presence of demolition equipment on the property. The building inspectors allegedly informed Willow that the residence was "only being prepared for demolition, and that no demolition had occurred." During this meeting, when Lyons' building inspectors allegedly made that representation to Willow, Lyons completely demolished the residence, "leaving the lot as bare land."

¶ 8    The underlying complaint alleges Willow "spent substantial amounts of money in renovation of the [property] in reliance upon building permits issued by [Lyons,] giving [Willow] vested property rights in said permits under Illinois law." The underlying complaint alleges Lyons "engaged in the demolition of the Premises without legitimate revocation or other legitimate legal action to terminate the building permits held by [Willow,] thereby interfering with and destroying [Willow's] vested rights in said permits.

¶ 9    The underlying complaint alleges, on information and belief, that "the actions of [Lyons] were not taken to substantially advance legitimate governmental interests of the public but instead in the illegitimate pursuit of purchase of the Premises by [Lyons] as an empty lot at a low price for the eventual enrichment of [Lyons] officials or their favored partisans."

¶ 10    The underlying complaint alleges the loss to Willow "resulting from the demolition of the Premises" exceeds $75,000.

¶ 11    Counts I and II of the underlying complaint are for a violation of 42 U.S.C. § 1983. Count I alleges Lyons acted under color of state law to violate Willow's fifth amendment right not to be deprived of property without just compensation by "a. improper abrogation of the permits granted for [Willow] to engage in the Renovation Project; b. destruction of [Willow's] rights in building permits to complete construction as called for under said permits; and c. demolition of the Premises." Count II alleges Lyons acted under color of state law to violate Willow's fourth amendment right to be secure in its property against unreasonable seizures "by engaging in unreasonable seizure of [Willow's] property and removal of same from the Premises."

¶ 12    Count III of the underlying complaint is for "Eminent Domain" and alleges that Lyons' actions constituted "damage" and "taking" of Willow's property and "the vested rights of

[Willow] in issued building permits as well as the buildings on the Premises" without just compensation in violation of section 15 of the Illinois constitution.

¶ 13    On February 3, 2021, Liberty filed its complaint for declaratory judgment in the circuit court seeking a declaration that "under insurance policies issued by it to [Lyons,] it has no duty to defend or to indemnify [Lyons] in [Willow's] lawsuit." The declaratory judgment complaint alleges that there are three policies at issue: a Commercial General Liability (CGL) policy, a Public Official Liability (POL) policy, and a Commercial Liability Umbrella (CLU) policy. The declaratory judgment complaint alleges generally that neither the CGL nor CLU policies provide coverage because the underlying complaint "does not allege 'property damage' caused by any 'occurrence' " as required by [the] insuring agreement, and the POL policy does not provide coverage because the underlying complaint does not allege any "wrongful act" as required by the insuring agreement. The declaratory judgment complaint also alleges that several exclusions eliminate coverage under each policy.

¶ 14    The CGL policy provides coverage for property damage caused by an "occurrence" and excludes damage expected or intended by the insured:

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of *** 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages.
>
> * * *
>
> This insurance applies to *** 'property damage' only if: (1) The *** 'property damage' is caused by an 'occurrence.'
>
> * * *

'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

'Property damage' means: a. Physical injury to tangible property, including all resulting use of that property. *** b. Loss of use of tangible property that is not physically injured."

¶ 15    The CGL policy also contains the following language: "This insurance does not apply to: *** 'property damage' expected or intended from the standpoint of the insured."

¶ 16    Count I of the declaratory judgment complaint is for a declaration that Liberty has no duty to defend or indemnify Lyons under the CGL policy. Count I specifically alleges that the underlying lawsuit seeks damages for "property damage" and that the "property damage" is the demolition of the residence; the underlying complaint does not allege the demolition was caused by an "occurrence" within the meaning of the policy; and the underlying complaint only alleges "property damage" expected or intended from the standpoint of Lyons. Liberty claims that coverage under the CGL policy is precluded by the insurance policy or excluded from coverage under the expected or intended injury exclusion.

¶ 17    Count II of the declaratory judgment complaint is for a declaration that Liberty has no duty to defend or indemnify Lyons under the POL policy. Count II specifically alleges that the underlying complaint does not allege a "wrongful act" as defined by the POL policy; therefore, coverage is precluded by the insurance contract. The POL policy reads, in pertinent part, as follows:

"This insurance applies to claims on if: (1) The claim is caused by a 'wrongful act' committed while conducting duties by or on behalf of you or 'your boards.'

* * *

'Wrongful act' means any actual or alleged negligent act, failure to act, error or omission."

¶ 18    The POL policy excludes from this coverage:

"o. Claims arising out of 'property damage'

***

u. Claims arising out of malicious, criminal, dishonest or fraudulent 'wrongful acts,' or any knowing violation of rights or laws, committed by or at the consent, direction or knowledge of the insured. This exclusion does not apply to our duty to defend the insured until it has been determined in a 'final adjudication' or admitted that such 'wrongful act' or knowing violation was committed by the insured or with consent, direction or knowledge of the insured.

* * *

w. Claims arising out of any insured's personal profit, advantage, gain or compensation to which that insured is not legally entitled.

* * *

z. 'Punitive or exemplary damages'

* * *

cc. Claims arising out of the taking or controlling of private property for public use or benefit, including the diminution in value of such property, by condemnation, inverse condemnation, adverse possession, dedication by adverse use, eminent domain or any other proceeding."

¶ 19    Count II also alleges that any coverage would be excluded by the POL policy because: the underlying lawsuit arises out of " 'property damage' to the Premises;" the underlying complaint alleges that Lyons was motivated by a pursuit to purchase the property at a low price to the enrichment of Lyons' officials for personal profit; the underlying complaint alleges a taking without just compensation constituting a taking for public use; and because other listed exclusions also eliminate coverage.

¶ 20    The CUL policy includes a Public Officials Liability Coverage Limitation (Claims-Made) Endorsement. That endorsement excludes from coverage:

> "Any liability arising out of a wrongful act committed while conducting duties by or on behalf of you or your boards.
>
> * * *
>
> However, this exclusion does not apply to the extent the underlying insurance provides coverage for damages arising out of a wrongful act. Coverage provided will be no broader than that provided by underlying insurance."

¶ 21    If the underlying insurance provides coverage, the CUL policy provides that, for purposes of coverage provided by the POL endorsement in the CUL policy: "We will pay on behalf of the insured those sums in excess of the retained limit that the insured becomes legally obligated to pay as damages because of claims arising out of a wrongful act to which this insurance applies. *** This insurance applies to claims only if: The claim is caused by a wrongful act committed anywhere while conducting duties by or on behalf of you or your boards."

¶ 22    Finally, for purposes of the POL endorsement in the CUL policy, "Wrongful act means any actual or alleged negligent act, failure to act, error or omission;" and "A wrongful act, a

single wrongful act or a series of causally connected wrongful acts will be considered one occurrence."

¶ 23    Count III of the declaratory judgment complaint is for a declaration that Liberty has no duty to defend or indemnify Lyons under the CUL policy. As to the CUL policy, count III specifically alleges that the alleged "property damage" for which the underlying suit seeks damages is the demolition of the "Premises;" the underlying complaint does not allege the demolition was caused by an "occurrence" within the meaning of the CUL policy; and the underlying complaint "alleges only 'property damage' expected or intended from the standpoint of [Lyons;]" therefore, coverage is either precluded by the language of the policy or excluded from coverage by the exclusion for expected or intended injury. The CUL policy reads, in pertinent part, as follows:

> "We will pay *** those sums in excess of the retained limit that the insured becomes legally obligated to pay as damages because of *** property damage.

> * * *

> With respect to *** property damage ***, this insurance applies only if: *** The *** property damage *** is caused by an occurrence ***.

> * * *

> Occurrence means, with respect to *** property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

> * * *

Property damage means: Physical injury to tangible property, including all

resulting loss of use of that property. \*\*\* or Loss of use of tangible property that

is not physically injured."

The CUL policy excludes from its coverage: "property damage expected or intended from the

standpoint of the insured."

¶ 24    On April 9, 2021, Lyons filed its Answer and Affirmative Defenses to the declaratory

judgment complaint. The Answer admits that for purposes of the CGL policy (count I) the

alleged property damage for which the underlying lawsuit seeks damages is the demolition of the

premises. However, for purposes of the CUL policy (count III), Lyons denies the allegation that

the alleged "property damage" for which the underlying lawsuit seeks damages is the demolition

of the premises. Lyons' Third Affirmative Defense claims that:

> "In the Underlying Lawsuit [Willow] seeks compensation not only for
>
> property damage, but also for its constitutional injuries. Therefore, any Policy
>
> language excluding coverage for property damage and punitive damages is not
>
> sufficient to bar the Village's claim for coverage under the Policy.
>
> The constitutional causes of action and damages sought extend beyond
>
> claims of property damage, the taking of property for public use, and claims of
>
> personal profit, including but not limited to allegations concerning the deprivation
>
> of its rights; thus the exclusions upon which [Liberty] seek to rely upon are
>
> insufficient to bar coverage.

* * *

> [Liberty's] claims that coverage is excluded for malicious, criminal,
>
> dishonest or fraudulent wrongful acts does not impact [Liberty's] duty to defend
>
> until there is a final adjudication or admission concerning said wrongful act ***."

¶ 25    In August 2021, Willow stipulated that it would be bound by the declaratory judgment concerning whether any of Liberty's policies provide coverage to Lyons for Willow's lawsuit. The trial court voluntarily dismissed Willow as a party to the action.

¶ 26    The parties filed cross-motions for judgment on the pleadings. Following a hearing, the trial court granted judgment on the pleadings in favor of Liberty on count I (CGL) of the declaratory judgment complaint and granted judgment in favor of Lyons on counts II (POL), but "only with respect to [Liberty's] duty to defend [Lyons] in the Underlying Lawsuit," and count III (CUL), but "only in the event the POL Policy is exhausted." Liberty filed a motion to reconsider the trial court's judgment on the cross-motions for judgment on the pleadings. (Liberty attached a Memorandum Opinion and Order from the United States District Court for the Northern District of Illinois granting summary judgment in favor of Lyons on Willow's complaint. Willow appealed that judgment.) After hearing on the motion to reconsider, the court granted Liberty's motion to reconsider, and entered judgment in favor of Liberty on counts II (POL) and III (CUL) of the declaratory judgment complaint.

¶ 27    This appeal followed.

¶ 28                                     ANALYSIS

¶ 29    This is an appeal from a final judgment on a motion for judgment on the pleadings. 735 ILCS 5/2-615(e) (West 2020) ("Any party may seasonably move for judgment on the pleadings.")). This court reviews judgments on motions for judgment on the pleadings *de novo*. *Continental Casualty Co. v. 401 N. Wabash Venture, LLC*, 2023 IL App (1st) 221625, ¶ 25. *De*

*novo* review of a judgment on a 2-615(e) motion means that this court performs the same analysis the trial court would perform. *Rico Industries, Inc. v. TLC Group, Inc.*, 2014 IL App (1st) 131522, ¶ 14. "A trial court properly grants a motion for judgment on the pleadings *** 'if the pleadings on file disclose no genuine issues of material fact so that the movant is entitled to judgment as a matter of law.' [Citation.]" *Id.* In ruling on a motion for judgment on the pleadings the court only considers those facts appearing on the face of the pleadings, matters subject to judicial notice, and any judicial admissions in the record. *Continental Casualty Co.*, 2023 IL App (1st) 221625, ¶ 25. All well-pled facts and the reasonable inferences based on those facts are taken as true. *Id.* Indeed, when a party moves for judgment on the pleadings, it concedes the truth of the well-pled facts in the nonmoving party's pleadings. *Allstate Property and Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 16. See also *McCall v. Devine*, 334 Ill. App. 3d 192, 198 (2002) (citing *Richo Plastic Co. v. IMS Co.*, 288 Ill. App. 3d 782, 786 (1997)). "When evaluating the facts, a court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party." *McCall*, 334 Ill. App. 3d at 198 (citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 483 (1998)).

¶ 30    The question in this case is whether the facts appearing on the face of the declaratory judgment complaint and the pleadings on file and the reasonable inferences from those facts disclose that there is no genuine issue of material fact and either party is entitled to judgment as a matter of law that Liberty does or does not have a duty to defend Lyons. *Illinois State Bar Ass'n Mutual Insurance Co. v. McNabola Law Group, P.C.*, 2019 IL App (1st) 182386, ¶ 12 ("Where cross-motions for judgment on the pleadings are filed, the parties 'agree that only a question of law is involved and invite the court to decide the issues based on the record.' "); *Rico Industries, Inc.*, 2014 IL App (1st) 131522, ¶ 14. "In a declaratory judgment action in which the issue is

whether the insurer has a duty to defend, courts first look to the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance contract." (Citations and internal quotation marks omitted.) *Professional Solutions Insurance Co. v. Karuparthy*, 2023 IL App (4th) 220409, ¶ 47. See also *Continental Casualty Co.*, 2023 IL App (1st) 221625, ¶ 26. If the facts alleged in the underlying complaint fall even potentially within the policy's coverage, the insurer has a duty to defend. *Continental Casualty Co.*, 2023 IL App (1st) 221625, ¶ 26.

¶ 31 The insurer has a duty to defend if only one of several alleged theories of recovery in the complaint potentially falls within the policy's coverage and the insurer must defend the entire complaint. *Erie Insurance Exchange v. Aral Construction Corp.*, 2022 IL App (1st) 210628, ¶ 28; *American Alliance Insurance Co. v. 1212 Restaurant Group, LLC*, 342 Ill. App. 3d 500, 510 (2003) ("It is well settled that if one claim in a complaint falls within or potentially within a policy's coverage, then the insurer has a duty to defend the insured as to the entire complaint.").

¶ 32 The factual allegations of the complaint determine whether there is a duty to defend, not the legal theory under which the action is brought. *Universal Underwriters Insurance Co. v. LKQ Smart Parts, Inc.*, 2011 IL App (1st) 101723, ¶ 26 (citing *Pekin Insurance Co. v. Dial*, 355 Ill. App. 3d 516, 520 (2005)). The allegations are not required to be in any particular form. *Karuparthy*, 2023 IL App (4th) 220409, ¶ 48 (citing *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 35). "[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy." (Internal quotation marks omitted.) *Empire Indemnity Insurance Co.*, 2013 IL App (1st) 112346, ¶ 35. In fact, "[l]ittle

weight is given to the legal label that characterizes the allegations of the underlying complaint; rather, the determination focuses on whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy." *Illinois State Bar Ass'n Mutual Insurance Co. v. Mondo*, 392 Ill. App. 3d 1032, 1037 (2009). The court should read the complaint as a whole "to assess its true nature." *Id.* "[C]ourts should consider each count in a plaintiff's complaint to determine (1) what the plaintiff's complaint is really alleging and (2) considering the totality of the plaintiff's complaint, whether an insurance company has a duty to defend." *Karuparthy*, 2023 IL App (4th) 220409, ¶ 74. "The threshold for finding a duty to defend is low and any doubt with regard to such duty is to be resolved in favor of the insured." (Internal quotation marks omitted.) *Acuity v. M/I Homes of Chicago, LLC*, 2022 IL App (1st) 220023, ¶ 49.

¶ 33    We first look to the allegations in the underlying complaint. *Continental Casualty Co., LLC*, 2023 IL App (1st) 221625, ¶ 26.

"A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. [Citation.] Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. [Citation.]" *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.,* 223 Ill. 2d 352, 362 (2006).

¶ 34    The parties disagree as to whether the policy "is really alleging" claims for "property damage" in the form of demolition of the residence or that, and something more. For example,

Liberty argues that the trial court correctly found that all of the claims and damages in the underlying complaint arise out of the "property damage" that is the demolition of the residence. Liberty further asserts that "the claims related to the loss of building permits are inextricably linked to the demolition of the building and, accordingly, arise out of 'property damage.' " Liberty argues that because all of the claims in the underlying lawsuit "arise out of," *i.e.*, were caused by, "property damage," they are excluded by the exclusion in the POL policy language that exclude coverage for "[c]laims arising out of *** 'property damage.' " See *Allstate Insurance Co. v. Smiley*, 276 Ill. App. 3d 971, 978 (1995).

¶ 35    To the contrary, Lyons argues that all of the claims do not "arise out of" the demolition of the residence because Willow also claims, among other things, "abrogation of issued building permits and damages related to unjustified fines and interference in the rehab work." Lyons argues that Willow has potentially viable claims in the underlying complaint "based on the alleged course of dealings between the parties." Lyons asserts these harms are not limited to harms to Willow's tangible property; therefore, the exclusions for "property damage" do not apply. Specifically, Lyons argues the exclusions would not apply to interference with Willow's claimed vested rights in the building permits, damages from its reliance on the permits, and "constitutional injuries from [Lyons'] officials allegedly exceeding their authority in dealing with the property," including "the privacy and/or other constitutional rights violations and injuries raised by [Willow] under the fourth and fifth amendments." Lyons argues that Willow's claims "potentially involve both property and privacy rights" that "do not necessarily arise only from the demolition," and those damages are not to "tangible" property but rather to Willow's rights.

¶ 36    In *Smiley*, the court held that the injury arose out of a business activity (which was excluded from coverage) because the injury (a death) "originated or came about from the [business activity.]" *Smiley*, 276 Ill. App. 3d at 979. Liberty argues that similarly here, regardless of the type of claim alleged, all of the claims "came about" because Lyons destroyed the residence, which is "property damage" under the policy. In other words, Willow lost its rights in the building permits because, and only because[1], Lyons destroyed the property to which the permits applied.

¶ 37    We disagree with the assertion that all of the claims in the underlying lawsuit only "came about" because Lyons demolished the residence. This court must look to the allegations in the underlying complaint as a whole, construed liberally in Lyons' favor, to determine whether the conduct alleged in the underlying complaint arguably falls within at least one of the categories of wrongdoing listed in the policy. *Mondo*, 392 Ill. App. 3d at 1037. We must look to the "true nature" of the underlying complaint. *Id.* We may not focus, as Liberty has, on the discreet moment when the conduct alleged in the complaint finally had injurious effect. See *Karuparthy*, 2023 IL App (4th) 220409, ¶ 66 (rejecting argument that the means of accomplishing the harm can be distinguished from the harm itself).

¶ 38    In *Karuparthy*, the insured, a doctor, injected his patient with ketamine and sexually assaulted her. The patient filed the underlying lawsuit in that case against the doctor alleging the doctor immobilized her with a medical substance and assaulted her and that in administering the medical substance the doctor breached the standard of care in numerous ways unrelated to the sexual assault. See *id.* ¶¶ 9-11. The doctor's insurer filed a declaratory judgment complaint

---

[1] Liberty argues: "Causation is expressly alleged by [Willow:] *but for* the demolition of the Premises, there would have been *no claim* for abrogation of rights in [Willow's] building permits." (Emphasis omitted and emphases added.)

seeking a declaration it had no duty to defend the doctor because the complaint alleged intentional conduct by the doctor that did not constitute an "incident" under the policy: the doctor's conduct did not constitute "professional services," which was required under the definition of "incident." *Id.* ¶¶ 21-22. On the parties' cross-motions for judgment on the pleadings the insureds argued that the assault was separate from the administration of the injection; in other words, the injection shows that the victim did receive medical treatment as defined by the terms of the policy. *Id.* ¶ 35.

¶ 39     The *Karuparthy* court found that "[i]t is well settled that the substance of the factual allegations of the underlying complaint—not the legal labels attached thereto—determines whether a claim falls potentially within coverage. [Citation.]" *Id.* ¶ 60. Applying that principle, the court concluded that any person reading the underlying complaint as a whole would easily understand that the patient singularly sought to recover for injuries resulting from the sexual misconduct. *Karuparthy*, 2023 IL App (4th) 220409, ¶ 61. The court rejected the insured's argument that the negligence counts (which would have triggered coverage) were "wholly independent and separate from the intentional torts." *Id.* ¶ 64.

¶ 40     The court found that "the substance of [the underlying] complaint—what she is actually suing over—is [the doctor's] immobilizing her without her knowledge and consent to subsequently [assault] her." *Id.* ¶ 65. The court found that the means of accomplishing the misconduct could not, in that case, be distinguished from the misconduct itself where the underlying complaint failed to explain how the purported negligence "caused an injury distinct from those asserted in the intentional tort counts." The court conceded that the negligence counts may have been pled in the alternative to the intentional tort counts but noted that "no rule of law

requires this court to ignore the foundational allegations of the other counts in the complaint." *Id*. ¶ 69 (citing *Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461).

¶ 41    In this case, we look to "the substance of the factual allegations of the underlying complaint—not the legal labels attached thereto." *Karuparthy*, 2023 IL App (4th) 220409, ¶ 60. From our examination we find it clear that Willow sought to recover for injuries resulting from Lyons' machinations with regard to the subject property—whether in an effort to obtain the property for itself or simply to deprive Willow of it. The conduct alleged in the complaint is interference with Willow's "property" rights beyond its rights in the tangible property. We agree with Lyons that Willow alleges that for years before the house was demolished Lyons wrongfully interfered with its rights. We note that "[i]f the underlying complaint alleges facts that fall 'within[ ] or potentially within' the coverage of the policy, the insurer is obligated to defend its insured even if the allegations are 'groundless, false, or fraudulent.' " *Erie Insurance Exchange*, 2022 IL App (1st) 210628, ¶ 28.

¶ 42    The underlying complaint alleges Willow placed funds in escrow with Lyons based "on [a] claim by [Lyons] that repairs were required on the House." The complaint then alleges several ways Lyons prevented Willow from making those repairs. A year after Willow purchased the property Lyons informed Willow, without explanation, that some of its building permits would be terminated. Lyons required Willow to make additional repairs and improvements that were not "legitimately required" at additional expense to Willow. Willow suffered work stoppages and fines and was told certain repairs would be required but was never told what they were. We must agree with Lyons that Willow may have had a cause of action for any of these acts even if the house was never demolished.

¶ 43 We also agree that these potential claims do not involve tangible property. Black's Law Dictionary defines tangible property as "Property that has physical form and characteristics." PROPERTY, Black's Law Dictionary (11th ed. 2019). Simultaneously, the dictionary provides that: "It is common to describe property as a 'bundle of rights.' These rights include the right to possess and use, the right to exclude, and the right to transfer." PROPERTY, Black's Law Dictionary (11th ed. 2019). Lyons' conduct at minimum interfered with Willow's right to use the subject property, in this instance by improving it.

¶ 44 This case is not like *Smiley*, where the injured party and the insured interacted "only" because of the provision of the insured's business services to the injured party. See *Smiley*, 276 Ill. App. 3d at 979. While instructive, this case is also not like *Karuparthy*. Unlike that case, the underlying complaint in this case did explain how Willow suffered damages from Lyons' conduct that constitutes "property damage," *i.e.*, the destruction of the residence, and damage distinct from "property damage" or damage to tangible property, *e.g.*, interference with Willow's right to use its property. *Cf. Karuparthy*, 2023 IL App (4th) 220409, ¶ 69.

¶ 45 We find that the underlying complaint is "really alleging" damages from Lyons' interference with Willow's "bundle of rights" in the subject property and potential violations of its constitutional rights.

¶ 46 Having determined what the underlying complaint actually alleges, we next compare those allegations to the relevant provisions of the insurance contract. *Continental Casualty Co.*, 2023 IL App (1st) 221625, ¶ 26. We begin with the POL policy because, for the reasons to follow, we find that the allegations in the complaint fall within, or potentially within, that policy's coverage and any exclusion from coverage under the POL policy is not clear and free

19

from doubt. Having made that determination, the duty to defend arises and Liberty must defend the entire underlying lawsuit. *American Alliance Insurance Co.*, 342 Ill. App. 3d at 510.

¶ 47    Here, Liberty argues that the POL policy does not cover intentional conduct, and the underlying complaint only alleges intentional conduct by Lyons. Lyons argues the POL policy does not deny coverage for intentional conduct until there has been an adjudication that the insured acted intentionally; therefore, Liberty's denial of coverage was premature. Alternatively, Lyons argues the contract is ambiguous and for that reason must be construed in favor of coverage. The relevant policy language—in an "insuring clause"—effectively reads as follows: "This insurance applies to claims only if [t]he claim is caused by *** any actual or alleged negligent act, failure to act, error or omission."

¶ 48    We note at the outset it is well settled that this clause describes negligent acts, negligent failures to act, negligent errors, or negligent omissions and not just negligent acts. See *Illinois State Bar Ass'n Mutual Insurance Co. v. Cavenagh*, 2012 IL App (1st) 111819, ¶ 18. There, this court noted that "Illinois appellate court cases interpreting the 'very common' phrase *** 'have assumed, without deciding, that "negligent" modifies act, error, and omission and thus excluded coverage for intentional conduct.' " *Cavenagh*, 2012 IL App (1st) 111810, ¶ 18 (and cases cited therein). Thus, the "duty to defend is only triggered by allegations that the insured has committed an act of negligence, not an act classified as intentional." *Id.* Furthermore, "it is presumed that parties contract with knowledge of the existing law, and the laws in existence at the time a contract is executed are considered part of the contract." *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange*, 397 Ill. App. 3d 512, 531 (2010). Lyons' argument that the policy is ambiguous as to whether the term "negligent" modifies only "act" or also "failure to act," "error," and "omission," fails.

¶ 49    Lyons argues that the insuring clause, which again provides coverage only for negligent acts, conflicts with a separate exclusionary clause for "Malicious, Criminal, Dishonest or Fraudulent Acts" (the intentional act exclusion). The exclusionary clause at issue effectively reads:

> "This insurance does not apply to *** [c]laims arising out of malicious, criminal, dishonest or fraudulent 'wrongful acts', or any knowing violation of rights or laws. *** This exclusion does not apply to our duty to defend the insured until it has been determined in a 'final adjudication' or admitted that such 'wrongful act' or knowing violation was committed by the insured ***."

Lyons argues the exclusion for intentional acts is effective only after a final adjudication or admission that a wrongful act or violation was committed by the insured; therefore, Liberty must defend the lawsuit.

¶ 50    Liberty argues an exclusion in an insurance policy cannot operate to expand coverage "or otherwise change the meaning of the plain language of the insuring agreement." Liberty argues Lyons is attempting to use the exclusion to create coverage where none exists by arguing that the intentional acts exclusion should modify the insuring clause. In support of its argument this is improper, Liberty cites *Stoneridge Development Co., Inc. v. Essex Insurance Co.*, 382 Ill. App. 3d 731 (2008), for the proposition that "an exception to an exclusion cannot create coverage which does not already exist under the policy." Further, Liberty, citing *Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775 (2010), argues that where a claim does not fall within the insuring clause, an exception cannot provide coverage. Separately, Liberty argues the intentional act exclusion is merely redundant and does not create an ambiguity. Liberty argues "redundancy within an insurance policy's insuring agreement and its exclusions does not create

an ambiguity because 'parties and their attorney-drafters often want to make doubly sure' about a point." See *Executive Risk Indemnity, Inc. v. Chartered Benefit Services, Inc.*, 2005 WL 1838433, *9.

¶ 51   "[T]he court must construe the policy in its entirety giving effect to all parts of the policy as is possible, including endorsements." *Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co.*, 240 Ill. App. 3d 598, 602 (1992). "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Schuster v. Occidental Fire & Casualty Co. of North America*, 2015 IL App (1st) 140718, ¶ 17. "[A] policy that is susceptible to more than one reasonable interpretation is ambiguous and subject to rules of interpretation, such as the rule that ambiguities are construed against the drafter of the policy and in favor of coverage." *Id*. See also *Erie Insurance Exchange*, 2022 IL App (1st) 210628, ¶ 27; *Skolnik v. Allied Property & Casualty Insurance Co.*, 2015 IL App (1st) 142438, ¶ 25 (citing *Charles H. Eichelkraut & Sons, Inc. v. Bituminous Casualty Corp.,* 166 Ill. App. 3d 550, 557 (1988) for the proposition that "in general the question of whether a claim against an insured is potentially covered is so close in so many cases that the benefit of the doubt goes to the insured"). Any inconsistent or conflicting provisions must be construed in favor of granting coverage to the insured. *National Discount Shoes, Inc. v. Royal Globe Insurance Co.*, 99 Ill. App. 3d 54, 60 (1981). See also *Rhone v. First American Title Insurance Co.*, 401 Ill. App. 3d 802, 818 (2010) (Lampkin, J., concurring in part and dissenting in part) ("it has been consistently held that any ambiguity or inconsistent or conflicting provisions in insurance contracts must be construed in favor of granting coverage to the insured." (citing *National Discount Shoes, Inc.,* 99 Ill. App. 3d at 60)).

¶ 52     Lyons argues the clause at issue in this case is analogous to the arson clause in *Gulliver's East, Inc. v. California Union Insurance Co.*, 118 Ill. App. 3d 589, 590 (1983), therefore *Gulliver's* supports the proposition that the intentional acts clause is enforceable in this case. In *Gulliver's East, Inc.*, 118 Ill. App. 3d at 590, this court applied a clause that barred arson as a defense to an insurance policy until there was an indictment and conviction for arson. In *Gulliver's*, the court found that "rather than allow defendant to deny plaintiff's claim based solely upon defendant's opinion that the fire was intentionally set by or on behalf of plaintiff, the parties agreed to delegate the arson assessment to a disinterested party, the prosecuting authorities." *Gulliver's East, Inc.*, 118 Ill. App. 3d at 591. The court held this clause was not "repugnant to public policy." *Id*. at 592.

¶ 53     *Gulliver's* is inapposite to the issue before this court. *Gulliver's* came to the court on a certified question of whether the arson clause was valid and enforceable under Illinois law. *Id*. at 591. *Gulliver's* did not address whether the arson clause could be read to expand coverage in the insurance policy or to create an ambiguity in the policy, which are the questions before this court. *Gulliver's* is not helpful to our disposition. Similarly, *Executive Risk Indemnity, Inc.*, is not persuasive. We note it is not a decision of this court, so its persuasive weight is diminished. Regardless, in *Executive Risk Indemnity, Inc.*, the District Court did write that "[i]f coverage cannot be found in the insuring agreement, it will not be found elsewhere in the policy." *Executive Risk Indemnity, Inc.*, 2005 WL 1838433, *8. Liberty's position in this case is that the insuring clause does not provide coverage for intentional acts; therefore, coverage for intentional acts cannot be found in the intentional acts exclusion. Liberty argues the intentional acts exclusion is merely redundant to the insuring clause and its inherent exclusion of intentional acts. In that regard, the District Court wrote that:

"The Seventh Circuit has specifically taught that the anti-redundancy canon often is not helpful when interpreting disputed contractual language because parties and their attorney-drafters often 'want[ ] to make assurance doubly sure' about a point, 'a desire that explains much apparently superfluous language in contracts.' " *Executive Risk Indemnity, Inc.*, 2005 WL 1838433, at *9.

¶ 54    In *Executive Risk*, the insured's argument was expressly "that the exclusion language must be read to expand the coverage." *Id.* at *9. Alternatively, the insured's argument in *Executive Risk, Inc.* was that the exclusion "must be read so as to create an ambiguity that must be construed in its favor because [the insurer's] reading of the [exclusion] renders [the exclusion] redundant." *Id.*

¶ 55    We do not find *Executive Risk, Inc.* (or *Gulliver's*) helpful in this case because we disagree with Liberty's premise that Lyons is attempting to find coverage under the intentional acts exclusion or to use the intentional acts exclusion to expand the coverage stated in the "insuring clause." Nor do we agree that the intentional acts exclusion is merely redundant to the insuring clause's "exclusion" for intentional acts. We do not construe Lyons as arguing that the intentional acts exclusion creates a coverage that is not already contained in the policy or to modify the insuring clause. We construe Lyons as arguing that the intentional acts exclusion renders the POL policy ambiguous. Therefore, *Stoneridge Development Co., Inc. v. Essex Insurance Co.*, 382 Ill. App. 3d 731 (2008) is also inapposite. There, the court held that "an exception to an exclusion does not create coverage or provide an additional basis for coverage [citations,] but, rather, "merely preserves coverage already granted in the insuring provision." *Stoneridge Development Co.*, 382 Ill. App. 3d at 756.

¶ 56　In support of its position Liberty also relies on *Ludwig Candy Co. v. Iowa National Mutual Insurance Co.*, 78 Ill. App. 3d 306, 311 (1979), where court held that "the issue of coverage must necessarily be determined not by the various exclusions but by the policy definition of the coverage." The court agreed that "exclusions in an insurance policy have relevance only when there is coverage." *Id.*

¶ 57　*Ludwig Candy Co.* is distinguishable. In that case, the insured was attempting to construe the policy language defining coverage by reference to the various exclusions. *Id.* The court rejected that effort on the ground "the language of the policy defining coverage [was] clear and unambiguous." *Id.* The court felt itself "obliged to give this language its plain and ordinary meaning so that there is no need for construction or interpretation." *Id.* Unlike this case, nothing in the opinion suggests the insured in *Ludwig Candy Co.* even argued the insurance policy was ambiguous, much less that it was ambiguous.

¶ 58　For the same reason, we are not persuaded by Liberty's reliance on *Matthew T. Szura & Co., Inc. v. General Insurance Co. of America*, 543 Fed. Appx. 538, 544 (6th Cir. 2013). That case applied the general rule that "[e]xclusions limit the scope of coverage; an exclusion cannot expand the scope of coverage beyond that provided in the insuring agreement." *Id.* This foreign judgment is of little weight to this court generally; but specifically, we agree with Lyons that the *Szura & Co.* court did not address an ambiguity argument and nothing in the opinion suggests one was raised. *Szura* does not address or affect our analysis in this case and is, therefore, inapposite.

¶ 59　Once again, we construe Lyons to argue that the policy in this case is *not* clear and unambiguous and that resort to construction and interpretation *is* required. That being so, we find that Lyons is not interpreting the intentional acts exclusion as providing coverage or providing an

additional basis for coverage. *Cf. Central Illinois Public Service Co.*, 240 Ill. App. 3d at 603 ("an exception to an exclusion should not be interpreted as providing coverage or providing an additional basis for coverage."). In *Central Illinois Public Service Co.*, the court found that the effect of the proffered interpretation of an exclusion was to *eliminate* the language defining coverage and *replace* it with an exclusion. *Id*. at 602. In this case, Lyons is not attempting to replace the coverage in the POL policy, which only applies to negligent acts, with the intentional acts exclusion; Lyons is only attempting to demonstrate the insurance contract as a whole is ambiguous.

¶ 60     We also reject Liberty's argument the exclusion cannot create an ambiguity because of the inherent repetitiveness of insurance contracts. Liberty cites *Aetna Casualty and Surety Co. v. Freyer*, 89 Ill. App. 3d 617 (1980), but that decision does not aid Liberty's position. The issue in that case was whether there was an "occurrence" within the meaning of the policy because it was an "accident." *Aetna Casualty and Surety Co.*, 89 Ill. App. 3d at 619. The court noted that "[a]n accident has been defined as an unforeseen occurrence *** or an undesigned sudden or unexpected event." *Id*. Under the policy at issue in *Aetna Casualty* an "occurrence" must be accidental. *Id*. The court wrote that "insurance companies, in order to make this limitation of coverage absolutely clear and inescapable, include an exclusion for 'intentional injuries' caused by the insured. This intentional injury exclusion is necessary to the insurer to enable it to set rates and supply coverage only if losses are uncertain from the standpoint of any single policyholder." *Id*. at 619-20.

¶ 61     We find *Aetna* inapposite as well. *Aetna Casualty* suggests insurance companies sometimes include *superfluous* language to make their exclusions "absolutely clear and inescapable." *Id*. at 619-20. This finding in *Aetna Casualty* does not mean, however, that

*contradictory* clauses in an insurance contract do not give rise to an ambiguity, just because they address the same subject matter (in this case, intentional conduct). The *Aetna Casualty* decision supports the view that ambiguity could exist in the case of conflicting language in an insurance contract. The court recognized that "[t]he policy in this case did more than exclude intentional injuries. It excluded coverage for liability for bodily injury or property damage 'which is either expected or intended from the standpoint of the insured.' " *Freyer*, 89 Ill. App. 3d at 620. But the court found that "these two words, 'intended' and 'expected,' cannot be treated as synonymous since if they were there would be no reason for the insurer to have modified the insurance clause by adding the word 'expected.' " *Id*. Thus, in *Aetna Casualty*, there was no contradiction in terms from which to find ambiguity. See *id*.

¶ 62    In this case, the intentional acts exclusion is not merely superfluous to the insuring clause's "exclusion" nor does Lyons argue the intentional acts exclusion modifies, expands, or replaces the insuring clause. The two provisions in the contract before this court cannot coexist. *Central Illinois Public Service Co.* is illuminating. There, the question was whether an endorsement to an excess liability policy was ambiguous such that it had to be construed in favor of coverage. *Central Illinois Public Service Co.*, 240 Ill. App. 3d at 600-01. In that case, the alleged ambiguity was internal to a single endorsement to the policy and not in separate provisions of the policy; but this distinction makes no difference in light of the rule this court is to construe insurance contracts as a whole with the aim of giving meaning and effect to every provision. See *ABW Development, LLC v. Continental Casualty Co.*, 2022 IL App (1st) 210930, ¶ 26 ("Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose."). The contract language at issue in that case read as follows:

27

"It is understood and agreed that except insofar as coverage is available to the assured in the underlying insurances as set out in the schedule of underlying policies, this insurance shall not apply to any loss arising out of the contamination or pollution.

Notwithstanding the foregoing, it is understood and agreed that this insurance does not apply to bodily injury, personal injury, or property damage arising out of the discharge dispersal, release or escape of:

(1) smoke, vapors, soots, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(2) Oil or other petroleum substance or derivative (including any oil refuse or oil mixed with wastes) into or upon any watercourse or body of water, whether or not such discharge, dispersal, release or escape is sudden and accidental, but the exclusion *** (2) shall apply with respect to operations described as follows ***." *Central Illinois Public Service Co.*, 240 Ill. App. 3d at 601.

¶ 63    The insured argued the net effect of this language was (1) to create a condition for an exception to an exclusion from coverage for pollution (in that case, coverage by underlying insurance); then (2) to eliminate that exception to the exclusion and replace it with a different

exception with a different precondition (that being that the pollution being covered was "sudden and accidental" as opposed to long-term and unintentional). *Id*. at 602. The court, however, construed the language to mean that the second condition was only available where the first condition had been met. *Id*. ("Construing the language of paragraph two in light of paragraph one, the exception to the pollution exclusion for the discharge, dispersal, release or escape of the substances in sub paragraph (1) which is sudden and accidental is only applicable where there is underlying insurance coverage.").

¶ 64    This case is different. In this case, the "exclusion" in the insuring clause states the policy does not provide coverage for intentional acts. ("This insurance applies *** *only* if [t]he claim is caused by a 'wrongful act' " which means "any *** *negligent* act, failure to act, error or omission [—full stop]." (Emphases added.)). Then, using the same term as the unequivocal exclusion ("wrongful act" in quotations), the intentional act exclusion states there is at least conditional coverage for intentional acts unless and until a third party adjudicates the act as intentional ("This exclusion (for intentional acts) does *not* apply *** until it has been determined in a 'final adjudication' or admitted that such 'wrongful act' [it being unclear if this is the same 'wrongful act' in the insuring clause] *** was committed by the insured."). The two provisions read together say (1) there is no coverage—period; and (2) there is at least conditional coverage for intentional acts.

¶ 65    Liberty argues the "clear purpose" of the intentional act exclusion is to prevent it from "ever declining a defense based solely on" the intentional act exclusion. But if we accept Liberty's view the policy is not ambiguous and does not provide coverage for intentional acts, then Liberty would never be in a position to have to decline coverage based solely on the

intentional act exclusion—it could simply decline on the grounds there is no coverage. Liberty's argument about the purpose of the exclusion actually demonstrates the ambiguity it creates.

¶ 66    Similarly, Liberty's argument that Lyons' reading of the intentional acts exclusion would render the relevant portion of the insuring clause superfluous is not persuasive because the intentional act exclusion, if given effect, would not render the insuring clause superfluous, it would effectively replace it—which we cannot allow. *Supra*, ¶¶ 64-65. Nor can we just ignore the intentional acts exclusion. *ABW Development, LLC v. Continental Casualty Co.*, 2022 IL App (1st) 210930, ¶ 26. Again, this demonstrates, at minimum, the ambiguity in the policy.

¶ 67    "Our courts have repeatedly held that '[a]lthough "creative possibilities" may be suggested,' when considering the existence of an ambiguity in an insurance policy, 'only reasonable interpretations will be considered.' [Citations.]" *Erie Insurance Exchange*, 2022 IL App (1st) 210628, ¶ 50. It is reasonable to construe the intentional act exclusion to provide conditional coverage for certain narrow categories of intentional acts—specifically those listed in the intentional acts exclusion.[2]

¶ 68    We find that the policy is ambiguous as to its coverage. Therefore, we must construe the policy to provide coverage to Lyons on the underlying complaint under the POL policy. *National Discount Shoes, Inc.*; *Rhone*, 401 Ill. App. 3d at 818 (Lampkin, J., concurring in part and dissenting in part) (citing *National Discount Shoes, Inc.,* 99 Ill. App. 3d at 60) ("it has been consistently held that any ambiguity or inconsistent or conflicting provisions in insurance contracts must be construed in favor of granting coverage to the insured."); *Yates v. Farmers Automobile Insurance Ass'n*, 311 Ill. App. 3d 797, 800 (2000) ("Since the policy contains inconsistent provisions, we must construe the policy in a manner that is most favorable to the

---

[2] Those being: "malicious, criminal, dishonest or fraudulent [acts] or any knowing violation of rights or laws."

insured."). Furthermore, we find that the applicability of none of the exclusions in the POL policy is clear and free from doubt. Although the underlying complaint alleges in conclusory fashion that Lyons' officials were motivated to enrich themselves or their constituents and makes reference to a prior incident of an improper taking, there are insufficient facts alleged in the complaint as to Lyons' motivations as to the subject property to make the applicability of the exclusions for personal profit, taking for public use, or any other exclusion, clear and free from doubt.[3] Therefore, we construe the policy in favor of providing coverage to Lyons. See *Sentry Insurance v. Continental Casualty Co.*, 2017 IL App (1st) 161785, ¶ 38 (" '[W]here an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured.' *** *Wilson*, 237 Ill. 2d at 456 (' "provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer" ' [citation].").

¶ 69    Our holding is limited to Liberty's duty to defend Lyons; we make no finding concerning Liberty's duty to indemnify Lyons. A determination concerning Liberty's duty to indemnify Lyons would be premature at this point because we have found a duty to defend, which is broader than the duty to indemnify, and liability has not been finally resolved. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993) (principle that determination of duty to indemnify is premature until liability has been resolved  "is only operative in cases where the court has determined that the insurer's duty to defend its insured has arisen"). Liberty must defend Lyons against the entire lawsuit. *Erie Insurance Exchange*, 2022 IL App (1st) 210628, ¶ 28; *American Alliance Insurance Co.*, 342 Ill. App. 3d at 510. Because of our holding we decline to address whether Liberty also had a duty to defend under the CGL or

---

[3] Regardless, Liberty admits that "These exclusions were not relied upon by Liberty as a basis to deny a duty to defend the Village."

CUL policies. "[T]his court will not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *Chinlund v. Heffernan Builders, LLC*, 2020 IL App (1st) 191528, ¶ 17. See also *Mendez v. City of Chicago*, 2023 IL App (1st) 211513, ¶ 11 ("An 'actual controversy' requires a showing that the underlying facts and issues of the case are not *** premature, such that a court must pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice on future events.").

¶ 70                                                  CONCLUSION

¶ 71      For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with this order.

¶ 72      Reversed and remanded.